*Ridgely* and *Van-Horn*, for the plaintiff.
*Key*, for the defendant.

# GENERAL COURT, OCTOBER TERM, 1797.

## BEANE vs. MIDDLETON.

ERROR to Charles county court. It was an action of *assumpsit*, brought by the present defendant in error, for *state certificates.* The declaration, *(first count)* stated, "that whereas the said *Beane*, on the 16th day of July 1787, at Charles county aforesaid, was indebted to the said *Middleton* in the sum of 80l. 18s. 9d. current money, for so much money by the said B. before that time had and received to the use of the said *Middleton*; and being so indebted, assumed," &c. *The second count*, "And whereas a certain *John Glassgow*, by virtue of letters testamentary granted to him on, &c. on the estate of his deceased son, W. G. became entitled to receive from the

State of Maryland certificates for the sum of 80*l.* 18*s.* 9*d*, and afterwards, to wit, at, &c. on, &c. he authorised and empowered the said *Beane* to receive and pay the same to the said *Middleton;* and the said *B.* by virtue of the authority aforesaid, actually received two certificates of the value of 80*l.* 18*s.* 9*d.* current money, to wit, one of, &c. and one other of, &c. and so having received the same, he afterwards to wit, on, &c. at, &c. then and there assumed upon himself, and promised the said *Middleton* that he would well and truly content and pay the said two certificates of the value aforesaid, when afterwards he should be thereunto requested; Nevertheless," &c.

The action was brought in the county court to *June* term 1788, at which term the defendant appeared by his counsel and imparled.

*September* term, 1788, rule on the plaintiff to file his declaration at the next term.

*April* term, 1789, rule declaration extended to the next term.

*June* term, 1789, rule declaration further extended to the next term.

*September* term, 1789, declaration filed, and a rule laid on the defendant to plead at that term. The defendant made default, and the county court entered judgment for the sum of 46*l.* 18*s.* 5*d.* current money, damages, and costs of suit. To reverse which judgment the writ of error in this case was brought, and the cause was argued at *October* term, 1795, by *Pinkney* for the plaintiff in error, and by *Key* for the defendant in error.

*Pinkney* for the plaintiff in error. The declaration in this case contains two counts; the first for money had and received; and the other to receive and pay certificates. The county court, on the neglect of the defendant in that court to plead, assessed entire damages.

FIRST GROUND OF OBJECTION. That *non constat* on the face of the declaration, whether those certificates were to be paid to *Middleton* as *an agent,* or *for his own use*—certainly ambiguous; the word pay is no more than deliver. If the certificates were properly transferred it would not have given the power. If they were to be paid to *Middleton* as an agent, he cannot recover. Principles in pleading, 5 *Com. Dig.* 27; *Co. Lit.* 303 *a.* A count ought to have *certainty* and truth.

If a declaration by A. B. shews a title *cuidam* A. B, it cannot be intended to be the plaintiff, 5 *Com. Dig.* 27; 2 *Lev.* 207; and yet it clearly must mean the plaintiff. If it charges *quod predict A. B. deposuit,* where two of the same name are mentioned before, it shall not be in-

tended to be the defendant—5 *Com. Dig.* 27. *Cro. Eliz.* 267. The reason given in *Cro. Eliz.* 267, is "every declaration ought to be certain, and shall'not be taken by intendment." It ought to shew *plainly* and *certainly* all circumstances material for the maintenance of the action; for if there are *two* intendments, *it shall be taken most strongly against the plaintiff.* 5 *Com. Dig.* 32; Cites *Pl. Com.* 202 *(b.)*

The plaintiff, or demandant, in his declaration or count, ought to entitle himself to the action; for he is to recover by the validity of his own title, and not by the weakness of the defendants. 5 *Com. Dig.* 37; Cites *Vaugh.* 8, 58.

The conclusion from these premises is, that the right of action ought to be certainly set out in the declaration; and that if the statement of right is liable to two intendments, one for, the other against the plaintiff, he must fail.

Second ground of objection. Admitting that the certificates were to be delivered by *the authority* to the plaintiff, yet he cannot support this suit for two reasons.

1st. Because there is no express assumpsit on the part of the defendant to deliver them to him; and

2d. Because if there was, the plaintiff was a stranger to the consideration, as well as to the promise.

1st *Reason.* You cannot support assumpsit for the delivery of a collateral thing, (not money) without *a special or an express assumpsit. Indebitatus assumpsit* will not lie for certificates; it will not lie for stock; it will lie for nothing but money; 1 *Esp.* 99; 5 *Burr.* 2589; 2 *Blk. Rep.* 684.

Even if the original owner of the certificates had brought this suit, he must have declared, that the defendant promised, that when he should receive them he would pay them over in pursuance of authority; which is not alleged here. Had it been money, *indebitatus assumpsit* might have laid for it; but being certificates, without laying a promise to act according to the authority, he could not have recovered.

I admit, however, that proceeding to receive under the power would have been evidence of an antecedent promise; but then it must have been alleged in the declaration, which here is not done.

This count is *indebitatus assumpsit,* and there is no promise alleged at the time of receiving the authority. The promise stated is an implied one from the authority and receipt; and the court cannot infer an express promise, unless there had been a verdict. 5 *Com.* 144; *Hard.* 366.

This action is founded on contract, and yet no contract is alleged. It is true that facts are stated from which a contract might well be implied; but it being to do a collateral act, a special assumpsit must be laid. The defendant received an authority from the plaintiff to receive certificates and pay to the plaintiff; but it is not alleged that he promised to execute that power as conferred upon him; which (as special assumpsit) would have supported the action perhaps in favour of some person. The defendant is not alleged to have made any agreement to pay over to the plaintiff. The contract is wholly left to be implied, which cannot be; for *indebitatus assumpsit* will not lie for certificates. It may appear on the face of the declaration that certificates were received for the plaintiff's use. What then? Can you support *indebitatus assumpsit* for certificates had and received? And yet the court must determine so before this suit is supported  The amount of it is, that *indebitatus assumpsit* for *certificates* had and received, is good; for no special assumpsit is alleged. The promise stated is after the certificates are received, and is only the general implied promise from the circumstances.

2d. *Reason.* The plaintiff is a stranger to the contract; even supposing there had been an express one. No other consideration but the deceit upon the party giving the power, if not executed, after in part executed. *Cro.*

Who gave the power? whatever contract there was is stated to have been between the defendant and *Glassgow.* The plaintiff was no party to it in any shape.

1 *Stra.* 592. In assumpsit, *Crow,* the plaintiff, declares, that whereas one *John Hardy* was indebted to the plaintiff in 70l. upon a promise between this *Hardy,* and the defendant *Rogers,* it was agreed, that the defendant should pay the plaintiff's debt of 70l. for a sufficient consideration, which the case states, i. e. building a house; and then the declaration avers, that in consideration thereof the defendant promised to the plaintiff to pay him the 70l. which *Hardy* owed him. The defendant demurred, &c. It was held that the plaintiff was a stranger to the consideration, and judgment was given for the defendant. *Esp.* 105, 106. *Cro. Jac.* 668.

*Lastly.* If the plaintiff had brought the certificates, and the defendant appointed to receive them for his use, which is the only ground upon which the suit is maintainable, the moment his agent did receive for his benefit, the property vested in the plaintiff, and he ought then to have brought trover.

Oct. 1797.

Beane
vs.
Middleton.

I think I have shewn that one of the counts in this declaration is substantially defective, and it is certain that a judgment by default cures nothing.

LAST GROUND OF OBJECTION. Whether, as there is one good count, that will support the judgment which is general. If this was the case of a verdict and entire damages, *by the law of England,* the judgment would be erroneous, and there must be a *venire de novo.* But it is the case of a judgment by default, entire damages assessed by the court, and final judgment thereon; and if erroneous, there must be a complete reversal, for it cannot be set right; for the *judgment by default* is erroneous, and that cannot be rectified. In assumpsit, a judgment by *default,* or *nil dicit,* is, that the plaintiff recover his damages by reason of the premises, and goes to every count in the declaration; nor can the inquest afterwards sever the damages; for that must pursue the judgment, which is entire; so that the defect (if it is one) is incurable.

Where there is an entire judgment on two counts, one of which is bad, it is erroneous. 1 *Ventr.* 27, *(*21 *Car.* 2d.*) Moore & Lewis. Dougl.* 377, 730, 731. Lord *Mansfield.* The rule is now settled. He complains of its absurdity and inconvenience, but holds it to be obligatory.

It is the law of England, as far back as the colonization, and if down to the present time confirmed and sanctioned by uninterrupted usage and a series of decisions, it is the law here. *Absurdity* is no argument against it , if it is law, nor its *inconvenience.*

The exemption of a devisee from the claims of creditors was absurd and iniquitous, and yet neither law nor equity could relieve. Collateral warranties are stupid, yet they were obligatory until the statute interfered. In chancery, a wife is not dowable of an equitable interest, and yet the husband shall have curtesy of it. This is the rule in England, and so here. Lord *Hardwicke* complains of it as absurd and unjust; yet holds himself bound; and our chancellor the same. The scolloping of a deed of bargain and sale is nonsense; yet it is necessary; because it was so by the common law. The whole doctrine as to the construction of wills is nonsense.

But more applicable instances may be produced. Until the act of 1785, the merits of causes were destroyed by formal defects in proceedings. It was absurd, and yet only the legislature could relieve.

A man of plain sense would be shocked at the absurdity of one third of the old common law, which has been since changed by acts of parliament, or acts of assembly; yet it was law till it was altered.

The law is an artificial system, which must not be judged of by the ordinary rules of reason. It is a technical science; any known system is better than none. It is of importance to society that the rules of justice should not be fluctuating; that they should be fixed, and settled, and permanent.

This does not only apply to great rules of property, but to the rules of pleading, which *(Littleton sect. 534.)* Lord *Coke* thought of high importance; and so did Lord *Mansfield* in 1 *Burr.* 316.

The boundaries of actions; the manner in which they shall be conducted; the forms of declarations and pleadings; the effects of judgments and verdicts; are of deep concern to the administration of justice; and it is better that they should continue fixed, though they may produce partial inconvenience, than that all form should be sacrificed, and lawyers be unable to ascertain what grounds they stand upon. Uncertainty is fatal to any establishment; it is the bane of science, and peculiarly unbecoming in judicial proceedings. Look to the consequences of rejecting this rule, than which none is better settled. Every other rule of pleading (which may be thought inconvenient) is liable to the same rejection. *Non est factum* was formerly used as a dilatory plea; yet the court could not require it to be verified by affidavit. On a bond with penalty, the jury could not ascertain the sum due before the act of 1785, ch. 80. The rule was absurd; why was it not abolished without legislative aid? At common law you could only assign one breach on a bond for performance of covenants. Why did it require an act of parliament to provide against the absurdity? The doctrine of *debit and detinet* is nonsense, and useless nonsense; yet it is stubborn law. Why not reject all these rules, and a thousand others, as well as the present, for they are no better established; they depend on the common law, and English decisions. It is hard that when a man has brought debt, and filed his bond, and taken judgment by confession, it shall be reversed for want of a declaration; yet it is done every day. Why not admit specific articles to be recovered in an action for money had and received? &c.

In short, this rule is of the common law, and is to be found in every book of pleading in the office. There is no local reason against the adoption of it. It is hard to find a local reason which ought to influence the forms of pleading. The rules of pleading have been always held to be law here.

Again: There is no absurdity in the rule in many cases, and particularly in this.

Oct. 1797.

Beane
vs.
Middleton.

Suppose the several counts apply to different promises, and different sums, as they frequently do; and entire damages are given, how can you sever the damages so as to reject only those awarded on the bad count?

Again: In this case the 1st count is for money had and received, and the 2d count for certificates. That both counts are intended to apply to the certificates is evident. The same sum in each count, and the special count is that to which we look for the nature of the case. The 2d count is defective, and the plaintiff ought not to recover upon it; and the 1st count does not suit his case, and therefore ought not to recover on that; for he cannot recover certificates on a count for money had and received—*Esp.* 99. So that if he recovers in this case, it is upon a declaration in which one count is wholly vitious, and the other, though good in its form, is wholly inapplicable to his claim. Suppose it had been tried on *non assumpsit*; he could not have given evidence on the 1st count, and of course must have taken his verdict on the 2d count, which is defective, and shews no title. Would not his judgment have been arrested or reversed?

In short, the rule is not absurd; and if it is, as I find it to be law, so I argue upon it. I know not where to look for the law but in the books, and when I find it there, take it for granted it is so. I do not presume to judge of its propriety; I only ask if it be law.

The case was continued until this term, (October 1797) when

THE GENERAL COURT *reversed* the judgment of the County Court.

The Reporters have been informed by Mr. *Shaaff*, (who was employed as counsel for the plaintiff in error, on Mr. *Pinkney's* absence from the United States) that the general court reversed the judgment of the court below on the ground of a *misconlinuance* having taken place in the proceedings in that court.